UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

LEEANN CLARKSON,                :
                                :
    plaintiff,                  :
                                :
v.                              :   CASE NO. 3:18-cv-00477(RAR)
                                :
NANCY A. BERRYHILL,             :
ACTING COMMISSIONER             :
OF SOCIAL SECURITY,[1]          :
                                :
    defendant.                  :


# RULING ON PENDING MOTIONS

Leeann Clarkson ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g).  The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated February 5, 2018.  Plaintiff timely appealed to this court.  Currently pending are plaintiff's motion for an order reversing and remanding her case for a hearing (Dkt. #26-2) and defendant's motion to affirm the decision of the Commissioner.  (Dkt. #29-1.)

For the reasons that follow, the plaintiff's motion to reverse, or in the alternative, remand is GRANTED and the Commissioner's motion to affirm is DENIED.

---

[1] Andrew Saul is the new Commissioner of Social Security and has been added as a party automatically.

## STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1). In order to determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[2]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the

3

In order to be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[3]

## **PROCEDURAL HISTORY**

Plaintiff initially filed for disability insurance benefits under Title II and Title XVI on November 24, 2014. (R. 268.)[4] Plaintiff alleged a disability onset date of July 16, 2013. (R. 268.) At the time of application, plaintiff alleged that she suffered from Bipolar disorder, vertigo, lower back problems, thyroid problems, headaches, and blurry vision. (R. 171.) The initial application was denied on August 19, 2015, and again

---

Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

[4] The Court cites pages within the administrative record as "R. ___."

4

upon reconsideration on November 30, 2015. (R. 170-191, 194-211.) Plaintiff then filed for an administrative hearing which was held by ALJ Eskunder Boyd (hereinafter the "ALJ") on May 8, 2017. (R. 80-119.) The ALJ issued an unfavorable decision on July 10, 2017. (R. 7-21.) On August 24, 2017, plaintiff sought a review by the Appeals Council, which was denied on February 5, 2018. (R. 1-5.) Plaintiff then filed this action seeking judicial review. (Dkt. #26-2.)

## DISCUSSION

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence and the ALJ failed to develop the record. (Pl. Br. 18, 21.) Based on the following, the Court finds that the ALJ failed to develop the record. The Court therefore remands the case to the commissioner for further administrative procedure consistent with this ruling.

**I. The ALJ Failed to Develop the Record**

Plaintiff asserts that the ALJ failed to develop the record by failing to obtain an opinion from any treating physician and various medical records from several treating sources. The Court agrees.

An ALJ has the affirmative duty to develop the record "in light of 'the essentially non-adversarial nature of a benefits proceeding.'" Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Echevarria v. Secretary of HHS, 685 F.2d 751, 755 (2d

5

Cir. 1982)); see also Swiantek v. Commissioner, 588 F. App'x 82, 83-84 (2d Cir. 2015). "When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant." Santiago v. Astrue, No. 3:10-cv-937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing Pratts v. Chater, 94 F.3d 34, 37–38 (2d Cir. 1996)).

*a. The ALJ was required to obtain opinion evidence from plaintiff's treating physicians.*

A court must remand "where 'the medical records obtained by the ALJ do not shed any light on the [claimant's RFC], and [where] the consulting doctors did not personally evaluate' the claimant." Martinez v. Berryhill, No. 3:17-cv-843 (SRU), 2019 WL 1199393, at *11 (D. Conn. Mar. 14, 2019) (quoting Guillen v. Berryhill, 697 F. App'x 107, 108-09 (2d Cir. 2017) (summary order)). "The record is insufficient when '[t]he medical records discuss [the claimant's] illnesses and suggest treatment for them, but offer no insight into how [the] impairments affect or do not affect [the claimant's] ability to work, or [his] ability to undertake the activities of daily life.'" Martinez, 2019 WL 1199393, at *11 (alterations in original) (quoting Guillen, 697 F. App'x at 109).

The ALJ is not required to request an opinion from plaintiff's treating source where the ALJ's opinion is

6

consistent with a consultative examiner and "the ALJ also [has] all of the treatment notes from" the plaintiff's physician. Pellam v. Astrue, 508 Fed. Appx. 87, 89–90 (2d Cir. 2013).

Plaintiff asserts that the ALJ erred by failing to obtain opinion evidence from any of her treating sources, including Dr. Nawaz and APRN Baldino. (Pl. Br. 20.) Plaintiff further alleges that the ALJ erred by relying on Dr. Yacov Kogan's opinion as to plaintiff's mental RFC because Dr. Kogan is not a psychiatrist. (Pl. Br. 20.) The Court agrees.

Dr. Kogan examined plaintiff on July 22, 2015. (R. 572.) Dr. Kogan reported that plaintiff was alert and oriented to time and place, had normal expressive and receptive language, was able to provide an organized history with good memory for recent and distant elements, and had good thought process. (R. 574.) Dr. Kogan also reported that plaintiff's thought process was somewhat slow and that plaintiff required occasional repetition during the exam, especially with more complex, multitask steps. (R. 574-75.) Dr. Kogan opined that plaintiff had no limitations regarding her ability to speak, comprehend, remember, and carry out simple tasks. (R. 575.) However, Dr. Kogan opined moderate limitations regarding plaintiff's ability to remember, comprehend, and carry out complex instructions. (R. 575.) The ALJ assigned Dr. Kogan's opinion great weight. (R. 18.)

7

Mental limitations opined by non-mental health specialist are not entitled to great or controlling weight. See Drogo v. Colvin, No. 5:13-CV-0946 GTS, 2015 WL 4041732, at *7,*9 (N.D.N.Y. July 1, 2015). In Fontanez v. Colvin, the court determined that the ALJ failed to develop the record by "fail[ing] [to] obtain [a] mental RFC assessments from Plaintiff's treating psychiatrist or treating psychologist, Drs. Ruiz and Nair, respectively." Fontanez v. Colvin, No. 16-CV-01300 (PKC), 2017 WL 4334127, at *22 (E.D.N.Y. Sept. 28, 2017). The record contained treatment notes from Doctors Ruiz and Nair; an assessment by plaintiff's treating physician, an internal medicine specialist, Dr. Navarro, and an opinion from a consultative psychologist who examined the plaintiff, Dr. Efobi. Id. at *2, *20.

The court also stated that the opinions of Doctors Ruiz and Nair were particularity important because, as "stress is highly individualized, mentally impaired individuals may have difficulty meeting the requirements of even so-called 'low-stress' jobs, and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect [her] ability to work." Id. at *22 (internal quotation marks omitted)(quoting Marthens v. Colvin, No. 3:15-CV-535 (CFH), 2016 WL 5369478, at *12 (N.D.N.Y. Sept. 22, 2016))(alterations in

original). As such, findings of stress levels must be based on the opinion of a mental health professional. Fontanez, 2017 WL 4334127, at *22.

As in Fontanez, the record contains treatment notes from plaintiff's psychologist; an opinion from a consultative examiner, and an assessment of plaintiff's mental limitations by a non-mental health professional. However, unlike Fontanez, there is not a single opinion from any of plaintiff's treating physicians, nor is there any evidence to suggest that such opinions were requested. Further, the record lacks medical records from Dr. Nawaz, plaintiff's treating psychologist, during the relevant period. Indeed, only records after the relevant period were requested from Dr. Nawaz. (R. 778, 784.) Similarly, there are almost no treatment notes as to plaintiff's mental state during the relevant period. The only treatment notes from a mental health professional during any of the relevant period are from Community Center for Behavioral Health at Danbury. (R. 543-61.) However, the treatment notes demonstrate that plaintiff was not seen there from October 8, 2013 until November 28, 2014 with no following treatment. (R. 543.) As a result, the record lacks medical evidence from a mental health specialist for fourteen of the almost eighteen month relevant period.

While the Commissioner points to opinions by state agency consultants to demonstrate that there was not an obvious gap in the record, Fontanez makes clear that opinions by state agency consultants cannot cure such a defect. Where the record lacks sufficient medical records to supports the RFC determination, the only cure is an opinion by plaintiff's treating physician- not that of a consulting physician. See Fontanez v. Colvin, No. 16-CV-01300 (PKC), 2017 WL 4334127, at *22 (E.D.N.Y. Sept. 28, 2017) (remanding the ALJ's decision for failing to obtain a mental RFC determination from plaintiff's treating psychiatrist where plaintiff's medical records did not shed light on plaintiff's mental RFC despite consulting physicians opining plaintiff's mental RFC limitations); see also Martinez v. Berryhill, No. 3:17-cv-843 (SRU), 2019 WL 1199393, at *11 (D. Conn. Mar. 14, 2019)(stating that a court must remand where both the medical records obtained by the ALJ do not shed any light on the plaintiff's RFC and the consulting doctors did not personally evaluate the plaintiff); Guillen v. Berryhill, 697 F. App'x 107, 108-09 (2d Cir. 2017) (summary order) (remanding where both the medical records obtained by the ALJ do not shed any light on the plaintiff's RFC and the consulting doctors did not personally evaluate the plaintiff); Pellam v. Astrue, 508 Fed. Appx. 87, 89–90 (2d Cir. 2013)(the ALJ is not required to acquire an opinion from the plaintiff's treating source where

10

the ALJ's opinion is consistent with a consultative examiner and "the ALJ also [has] all of the treatment notes from" the plaintiff's treating physician)

The record here is clearly more deficient and presents more gaps than the record in Fontanez. Thus, the ALJ had a duty to request an opinion from plaintiff's treating physicians regarding her mental RFC limitations. Therefore, the Court must remand.

> *b. The ALJ failed to develop the record by failing to obtain the following medical records.*

Plaintiff asserts that an obvious gap in the record was created by the lack of medical records. (Pl. Br. 19.) Plaintiff asserts that the following medical records were missing from the record: several treatment notes from Danbury Hospital's Community Center from February 7, 2011 to October 8, 2013; medical records from St. Mary's Behavior Health prior to October 8, 2015; and all records from Yale Neurosurgery Group and Family Service Center. Plaintiff asserts that the ALJ failed to develop the record by failing to request and obtain these medical records.

The Regulations provide that an ALJ "will develop [the plaintiff's] complete medical history for at least the 12 months preceding the month in which" the plaintiff files an application for social security disability benefits, "unless there is a

reason to believe that development of an earlier period is necessary or unless [the plaintiff] say[s] that [his or her] disability began less than 12 months before [the plaintiff] filed [his or her] application." 20 C.F.R. § 404.1512(b)(1).

The Regulations further provide that the ALJ "will make every reasonable effort to help [the plaintiff] get medical evidence from [his or her] own medical sources and entities that maintain [his or her] medical sources' evidence when [the plaintiff] give[s] [the ALJ] permission to request the reports." Id. "Every reasonable effort means that [the ALJ] will make an initial request for evidence from [the plaintiff's] medical source or entity that maintains [the plaintiff's] medical source's evidence and . . . if the evidence has not been received, [the ALJ] will make one follow-up request to obtain the medical evidence necessary to make a determination." Id.

The ALJ does not have a duty to request additional evidence where the evidence in the record is "adequate for [the ALJ] to make a determination as to disability." Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

Applying these principles, plaintiff is incorrect that the ALJ failed to develop the record by not obtaining the medical records from Danbury Hospital for the period between February 2011 and October 2013. These records pre-date the relevant period and therefore their absence does not create an obvious gap in the record. See Colbert v. Comm'r of Soc. Sec., 313 F. Supp. 3d 562, 575-76 (S.D.N.Y. 2018)(stating that evidence prior to the relevant period is irrelevant to the plaintiff's RFC determination); see also Ortiz v. Saul, No. 18-CV-4516 (JLC), 2019 WL 4649516, at *20 (S.D.N.Y. Sept. 25, 2019)(holding that the ALJ failed to develop the record by relying on illegible treatment notes and opinion evidence that pre-dated the relevant period). Further, the ALJ requested plaintiff's medical records for the twelve-month period before her application for benefits as required. See 20 C.F.R. § 404.1512(b)(1).

Similarly, plaintiff states that the ALJ failed to develop the record by failing to obtain medical records from Yale Neurosurgery Group. (Pl. Br. 19.) However, plaintiff indicates that she had only one visit with Yale Neurosurgery Group, which was on January 13, 2015—one month following her DLI. (R. 312.) Plaintiff does not assert any significance to this medical appointment. Notably, the ALJ requested plaintiff's medical records from Yale Neurosurgery Group. (R. 145, 159.) Additionally, these records post-date the relevant period and

therefore their absence does not create an obvious gap in the record.  See O'Connell v. Colvin, 558 Fed. Appx. 63, 64 (2d Cir. 2014)(stating that evidence following plaintiff's DLI is irrelevant if there is no reasonable possibility that such evidence would change the outcome of plaintiff's application); see also Vilardi v. Astrue, 447 Fed. Appx. 271, 272 (2d Cir. 2012)(evidence after the plaintiff's DLI demonstrating a worsening of her condition was irrelevant to the ALJ's determination).

Plaintiff is also incorrect that the ALJ failed to develop the record by not receiving medical records from Family Service Center.  The ALJ requested plaintiff's medical records from Family Service Center even though plaintiff never discussed Family Service Center at her hearing and did not list Family Service Center as a facility to be contacted for medical records.  (R. 21-71, 144, 307-13.)  Plaintiff does not assert any significance to these records, or the time period they cover, or what treatment she sought.  Regardless, these records pre-date the relevant period and therefore their absence does not create an obvious gap in the record.  See Colbert v. Comm'r of Soc. Sec., 313 F. Supp. 3d 562, 575-76 (S.D.N.Y. 2018); see also Ortiz v. Saul, No. 18-CV-4516 (JLC), 2019 WL 4649516, at *20 (S.D.N.Y. Sept. 25, 2019).

The absence of Dr. Nawaz's treatment notes, however, created an obvious gap in the record. Plaintiff's alleged onset date is July 16, 2013. (R. 268.) Plaintiff filed for disability insurance benefits under Title II and Title XVI on November 24, 2014. (R. 268.) Therefore, the ALJ was required to obtain plaintiff's medical records from November 24, 2013 to November 24, 2014. 20 C.F.R. § 404.1512(b)(1). The ALJ only requested plaintiff's medical records from Dr. Nawaz at St. Mary's Hospital from November 10, 2015 to the present. (R. 778.) At the ALJ hearing on May 8, 2017, plaintiff specifically told the ALJ that medical records from Dr. Nawaz at St. Mary's Hospital were incomplete. (R. 62.) On June 1, 2017 the ALJ then made a follow up request for records after November 10, 2015. (R. 784.)

When plaintiff referred to treatment notes after September 2015, the ALJ stated that he had Dr. Nawaz's notes "up to September 2015." Plaintiff responded that she did not have access to the medical record to discover that records were missing prior to August 2015. (R. 31, 62.) Plaintiff was unrepresented at the ALJ hearing. The record establishes that plaintiff began treatment with Dr. Nawaz in September 2014—over a year earlier than the time period of the records requested. (R. 310.) As such, there was an obvious gap in the record.

Where evidence is missing, "the issue is whether the missing evidence is significant." Santiago v. Astrue, No. 3:10-cv-937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011). Evidence is significant if its absence harmed the plaintiff. See id. Remand is not required where "the record was sufficiently complete for the ALJ to make a substantially supported RFC determination." Moreau v. Berryhill, No. 3:17-CV-00396 (JCH), 2018 WL 1316197, at *12 (D. Conn. Mar. 14, 2018).

The only treatment notes from a mental health professional during any of the relevant period are from Community Center for Behavioral Health at Danbury. (R. 543–61.) These treatment notes demonstrate that plaintiff was not seen from October 8, 2013 until November 28, 2014 with no following treatment. (R. 543.) As a result, the record lacks medical evidence from a mental health specialist for fourteen of the almost eighteen-month relevant period.

Plaintiff did not begin her treatment with Dr. Nawaz until September 2014 which accounts for a maximum of three months of records during the undocumented, relevant period. (R. 310.) While three months may seem minimal, any ability to close the enormous gap in treatment notes during the relevant period would have been significant. As such, Dr. Nawaz's treatment notes were significant, and the Court cannot conclude that the record

16

was sufficiently complete for the ALJ to make a decision. Therefore, the Court must remand.

## II. The Court Will Not Consider Plaintiff's Remaining Arguments

In light of the Court's findings above, it need not reach the merits of plaintiff's remaining arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this Ruling. On remand, the Commissioner will address the other claims of error not discussed herein.[5]

## CONCLUSION

Based on the foregoing reasons, plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #26-2) is GRANTED and the Commissioner's motion to affirm that decision (Dkt. #29-1) is DENIED.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

---

[5] The Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the Court finds remand is appropriate to permit the ALJ to obtain a particularized statement from plaintiff's treating physician concerning plaintiff's physical residual functional capacity.

17

SO ORDERED this 3rd day of March 2020, at Hartford, Connecticut.

                                                                       /s/
                                        Robert A. Richardson
                                        United States Magistrate Judge